UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY DZIERBICKI,

    Plaintiff,     CASE NO. 07-CV-13109

*v.*     DISTRICT JUDGE THOMAS LUDINGTON
        MAGISTRATE JUDGE CHARLES BINDER
TOWNSHIP OF OSCODA,
ROBERT LAVACK,
ROBERT F. STALKER, II,
ALAN MACGREGOR,
KEVIN KUBIK, and
KEN KREINER,

    Defendants.
                            /

**ORDER ON PLAINTIFF'S MOTION TO RE-DEPOSE DEFENDANTS
LAVACK AND MACGREGOR AND CURTIS HALL AND MARK DAVID**

This order is entered under the authority given to this Magistrate Judge in an Order of Reference issued by District Judge Ludington pursuant to 28 U.S.C. § 636(b)(1)(A).

Before the Court is Plaintiff's Motion to re-depose two Defendants and two witnesses, which was filed on April 10, 2009. (Doc. 59.) Defendants filed a response in opposition to the motion (Doc. 61), and Plaintiff submitted a supplemental brief. (Doc. 63.) Oral argument was heard on April 29, 2009.

The issue before the Court is whether the attorney-client privilege was appropriately invoked by Plaintiff's counsel during the depositions of two defendants and two non-defendant police sergeants. At oral argument, counsel explained the context of the communications at issue. Plaintiff was employed as a police officer for Oscoda Township when this lawsuit was originally filed in July 2007 against Defendant LaVack (Chief of Police for Oscoda Township), Defendant Stalker (Township Superintendent), Defendant MacGregor (a supervisor), and

Defendants Kubik and Kreiner (police officers). In July 2008, while discovery was proceeding in this case, certain events transpired that led Defendants to contemplate whether Plaintiff Dzierbicki's employment should be terminated.[1] As defense counsel pointed out at oral argument, since Plaintiff already had litigation pending against the township, the police chief, and others, the township attorney was brought into the discussion of whether Plaintiff should be terminated to give legal advice on that question.[2] The meeting[3] was attended by the township attorney, Defendant Chief of Police Robert LaVack, Defendant Township Superintendent Robert Stalker, and two police sergeants (Curtis Hall and Mark David), who are not parties to this case but who were asked to conduct an internal investigation with regard to Plaintiff Dzierbicki's conduct.

During the deposition of Defendant LaVack, Plaintiff's counsel asked, "In your mind, did you think that Mr. Stalker didn't think termination was the correct route to take?" (LaVack Dep., Doc. 49, Ex. A at 26.) Counsel for Defendants instructed the deponent not to answer that question or any question "if the only basis for [his] answers is to recall a conversation [he] had with Bob Stalker in the presence of counsel, [because] that's privileged and [Plaintiff's counsel's] question is merely in a different way asking for [him] to recall and now discuss with you on the record privileged communication." (*Id.* at 26-27.) Defendant LaVack also refused, on the same grounds, to answer counsel's questions, "did Mr. Stalker initially agree with your recommendation to terminate?" and "when you say there was considerable debate [over

---

[1] Ultimately, Plaintiff's employment was terminated and he amended his complaint in February 2009 to add a claim of retaliatory discharge. (Am. Compl., Doc. 56.)

[2] Sergeant Curtis Hall testified during his deposition that "[i]t was a sit-down meeting with everybody, and everybody was speaking, and I believe that the Township attorney was asking us questions about this. . . . I think everything was spoken for, you know, for the attorneys to listen to." (Hall Dep., Doc. 63, Ex. 1 at 10-11.)

[3] It is unclear whether there was more than one meeting.

whether to terminate Plaintiff's employment], does that mean there was disagreement?" (*Id*. at 26, 28.) Plaintiff's counsel eventually asked whether there were any discussions about Plaintiff's termination outside of the presence of counsel, which there were, and Defendant LaVack answered the questions about what was said by whom during those discussions. (*Id*. at 29.)

Counsel for Plaintiff asserts that the attorney-client privilege is not nearly as broad as Defendants make it out to be, and that the mere presence of the township attorney in a room where township officials and police officers are discussing the possible termination of another officer does not render the entire discussion privileged. Furthermore, Plaintiff asserts that even if discussions between the police chief, the township superintendent, and the township attorney were privileged, the presence of the two police officers waived that privilege as they are neither parties to the lawsuit nor high-level decision makers for the township or the police department. (Pl.'s Mot., Doc. 59 at 3.) Plaintiff thus wants to re-depose these four individuals "to inquire into the nature of the conversations that these individuals had with each other, at a minimum (whether or not these conversations were undertaken in the presence of counsel)." (*Id*.)

The burden of establishing the existence of the attorney-client privilege rests with the person asserting it. *See In Re: Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983). "The elements of the attorney-client privilege are as follows: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992). Generally, the "attorney-client privilege is

3

waived by voluntary disclosure of private communications by an individual or corporation to third parties." *In Re: Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996).

When the client is an organization, such as a corporation or, as in this case, a township, questions arise as to which employees of the organization are considered "clients" for purposes of the privilege. The answer to that question is that it depends upon the circumstances. *See, e.g.*, *In re Grand Jury Subpoena*, 886 F.2d 135 (6th Cir. 1989) (privilege applied to communications of city counsel members who participated in meeting with city attorney because the city code required formal council approval of the matter at issue); *Reed v. Baxter*, 134 F.3d 351 (6th Cir. 1998) (privilege did not apply to communications of city council members who participated in meeting with city attorney because the meeting "was not a full meeting of the city council called pursuant to any provision of the city code," but merely a meeting to discuss "complaints [one council member] had received from constituents").

In *Upjohn Co. v. United States*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981), like in the case before this Court, the communications at issue were conveyed to the organization's attorney by lower-level employees as the result of an investigation or fact-finding mission. The United States Supreme Court determined that these employees were bound by the attorney-client privilege not to reveal confidential communications between themselves and counsel given within the scope of the employees' duties to enable the organization to obtain legal advice.[4] The Court held that the privilege applies even though

---

[4] Although *Upjohn* specifically dealt with private corporations, the Sixth Circuit has extended its rationale to municipal corporations as well. *See Ross v. City of Memphis*, 423 F.3d 596, 602 (6th Cir. 2005) (reasoning that since one purpose of the attorney-client privilege is to encourage uninhibited disclosure between attorney and client, there is "no reason that that function is no longer served simply because the corporation is a municipality or, more broadly, that the organization or agency is a government entity").

these employees were not "decision makers" of the organization. It explained that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice . . . [because] [t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Id*. at 390-91 (citation omitted).

However, the *Upjohn* Court also clarified that the protection of the privilege extends only to communications, and not to facts. *Id*. at 394-95. "A fact is one thing and a communication of that fact is an entirely different thing." *Id*. (citation omitted). Thus, a client may not be compelled to reveal what it said or wrote to its attorney, but it may not refuse to disclose any relevant fact within its knowledge merely because it incorporated a statement of that fact into its communication to the attorney. *Id*. at 396.

Applying these principles to the circumstances of this case, the Court finds that the attorney-client privilege extended to the communications made during the meeting with the township attorney and was not waived by the presence of Sergeants Hall and Curtis because Defendants have shown that the purpose of Hall and Curtis's presence was to give information to the lawyer to enable him to render sound and informed legal advice to the township decision makers. *See Upjohn, supra.* However, as *Upjohn* clarified, this does not mean that those present at the meeting were entitled to refuse to answer questions about the underlying facts of the incident(s) leading to Plaintiff's termination just because those facts were discussed at the meeting. The question before the Court, then, is whether the deposition questions the deponents refused to answer on advice of counsel were questions intended to elicit factual information. The Court finds that they were not.

The first question objected to was, "In your mind, [Defendant LaVack,] did you think that Mr. Stalker didn't think termination was the correct route to take?" (LaVack Dep., Doc. 49, Ex. A at 26.)  First, the Court finds the question confusing, since it is asking what one person thought that another person thought.[5]  Second, the question is not attempting to elicit any "fact," but rather seems to be asking Defendant LaVack to reveal who at the meeting was in favor of terminating Plaintiff and who wasn't.  Third, as counsel for Defendants pointed out at the hearing, if Plaintiff wanted to know whether Defendant Stalker was in favor of termination, he could be asked that question directly during his deposition.

The other questions – "did Mr. Stalker initially agree with your recommendation to terminate?" and "when you say there was considerable debate [over whether to terminate Plaintiff's employment], does that mean there was disagreement?" (*id*. at 26, 28) – similarly seem to be asking Defendant LaVack to reveal what was said at the confidential meeting with the township attorney, rather than asking him about factual occurrences that transpired outside of the meeting but were mentioned during the meeting for the purpose of giving the attorney the necessary background so that he could give informed advice.

Beyond these three questions, Plaintiff's motion does not indicate what information is sought, but rather vaguely states that Plaintiff wants to re-depose these four individuals "to inquire into the nature of the conversations that these individuals had with each other, at a minimum (whether or not these conversations were undertaken in the presence of counsel)." (Pl.'s Mot., Doc. 59 at 3.)  It is unclear what Plaintiff's counsel means by inquiring into the "nature" of the conversations, but to the extent that counsel wants to re-depose these

---

[5]The Court is concerned that the form of this question is designed to be a "back door" access route to what the deponent heard during a privileged conversation by asking instead what he thought.  If he only was able to have the thought because of what he heard, then the thought must be privileged as well.

6

individuals to gain more information about what transpired during the meeting with township counsel, the motion is **DENIED** because, pursuant to *Upjohn*, that conversation is protected by the attorney-client privilege. To the extent that Plaintiff wants to re-depose these individuals to ask about other relevant conversations between them, the motion is likewise **DENIED** because Plaintiff has already had the opportunity to ask such questions and, at least in the case of Defendant LaVack (whose deposition transcript is the only one attached to the motion), did ask them and received answers. (LaVack Dep., Doc. 49, Ex. A at 29.)

**IT IS SO ORDERED.**

Review of this Order is governed by 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72, and E.D. Mich. LR 72.1(d).

s/ *Charles E. Binder*
CHARLES E. BINDER
Dated: May 26, 2009                             United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Order was electronically filed this date, electronically served on Christopher Trainor, Shawn Cabot and Daniel White, and served on District Judge Ludington in the traditional manner.

Date:  May 26, 2009                 By    s/*Jean L. Broucek*
                                                Case Manager to Magistrate Judge Binder